UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| KEVIN E. RADEN and CAMI M. RADEN, | Case No. 12-CV-1240 (PJS/TNL) |
| Plaintiffs, | |
| v. | ORDER |
| BAC HOME LOANS SERVICING, LP and FEDERAL HOME LOAN MORTGAGE CORPORATION, nominal defendant, | |
| Defendants. | |

Patrick D. Boyle, LAW OFFICE OF PATRICK D. BOYLE, for plaintiffs.

Sparrowleaf Dilts McGregor, Andre T. Hanson, and Ronn B. Kreps, FULBRIGHT & JAWORSKI LLP, for defendants.

This is one of countless cases filed in the past few years in this Court by defaulting borrowers against lenders in connection with the lenders' attempts to foreclose on the borrowers' mortgages. Many of these cases arise out of the same scenario: The plaintiff borrows money to buy a home and executes a note and a mortgage securing the note. The plaintiff fails to repay the loan as promised. The plaintiff and the lender have conversations about the plaintiff's failure to repay the loan. Ultimately, the lender attempts to foreclose on the mortgage, and the plaintiff sues, alleging that during conversations with the plaintiff, the lender made promises that it did not keep.

In this case, Kevin and Cami Raden borrowed money from a predecessor of Bank of America, N.A. ("Bank of America").[1] The Radens suffered financial setbacks and could no

---

[1]Bank of America is the successor by merger to named defendant BAC Home Loans

(continued...)

longer make payments on their loan.  After communicating with the Radens on a number of occasions, Bank of America foreclosed on their mortgage.  The Radens sued, alleging that Bank of America committed fraud by promising to modify their loan without intending to keep that promise.  Bank of America now moves to dismiss the Radens' complaint.  The Court grants the motion for the reasons explained below.

## I.  FACTS

The Radens refinanced their home in 2006.  As part of that transaction, the Radens borrowed $230,000 from Countrywide Home Loans, Inc. ("Countrywide"), which did business as "America's Wholesale Lender."  That loan was secured by a mortgage on the Radens' home.  In 2008, Bank of America acquired Countrywide's assets, including the Radens' loan.

Unfortunately, the Radens experienced financial setbacks, and by spring 2009,[2] they were no longer able to make their monthly loan payments of $1,472.72.  The Radens began communicating with Bank of America about the possibility of a loan modification.  At first, Bank of America insisted that it would not modify the Radens' loan — i.e., that the Radens would have to pay the delinquent amount in full.  Compl. ¶ 22.  The complaint alleges, however, that on or about July 4, 2009, an unnamed employee of Bank of America informed the Radens in a

---

[1](...continued)
Servicing, LP ("BAC").  For simplicity's sake, the Court will refer to both Bank of America and BAC as "Bank of America."

The Federal Home Loan Mortgage Corporation was also named in the complaint as a "nominal defendant."  It joins in Bank of America's motion and arguments.

[2]It is not clear exactly when the Radens first missed a payment.  The complaint alleges that the Radens first missed a payment in May 2009.  Compl. ¶ 15.  But evidence in the record suggests that the Radens first missed a payment in March 2009.  Hanson Decl. Ex. 1 at 31 [ECF No. 11-1].  The precise date is immaterial, though, as there is no dispute that the Radens stopped making loan payments at some point during the spring of 2009.

telephone conversation that, based on financial information that the Radens had submitted to Bank of America, the Radens had been "pre-approved" for a loan modification.  Under the anticipated modified loan, the Radens' new monthly payment would be between $1,096 and $1,200.  Compl. ¶ 24.

At this point, the complaint's recitation of the course of events becomes difficult to follow — and, in some respects, difficult to believe.  According to the complaint, shortly after the July 4 conversation in which a loan modification was promised, the Radens agreed with Bank of America to a trial-period plan pursuant to a different loan modification.  The complaint does not make clear why Bank of America would agree to a second loan modification before it had even implemented the first.  The complaint does allege, however, that under this trial-period plan, the Radens were required to make mortgage payments of only $147.42 for three months (September, October, and November 2009).  Compl. ¶ 26.

This allegation is very difficult to believe.  At oral argument, the Radens' attorney candidly admitted that — like the Court, and like the attorney for Bank of America — he had never heard of a trial-period plan that required such small payments.  It is difficult to know what such a "trial" would prove.  After all, the Radens were originally obligated to pay $1,472.72 per month, and then were told that their loan would be modified to require monthly payments of between $1,096 and $1,200.  No bank is going to modify a loan to substitute monthly payments of $147.42 for monthly payments of $1472.72.  The complaint gives some hint that even the Radens realized this.  According to the complaint, the Radens asked for written confirmation of this too-good-to-be-true offer.  But Bank of America allegedly informed the Radens that it was

not the bank's policy to send out written confirmation of trial-period plans agreed to by telephone.  Compl. ¶ 27.

Apparently, the Radens made the payments required by the trial-period plan, and, at the end of the trial period, Bank of America told the Radens that they would have to submit new financial information in connection with their application for a permanent loan modification. Compl. ¶ 29.  Bank of America repeated this request several times over the ensuing months; in fact, the Radens allege that they submitted financial documents to Bank of America on eight separate occasions, and submitted applications for a loan modification on four separate occasions.  Compl. ¶¶ 32, 35.

The heart of the Radens' complaint is their allegation that, "[a]t all times during the mortgage loan modification process," the Radens were "led to believe that they would be provided with a loan modification that complied" with the Home Affordable Mortgage Program ("HAMP").  Compl. ¶ 37.  At no point, however, did Bank of America actually offer a HAMP modification.  And on August 23, 2011, the Radens' property was sold at a sheriff's sale. Compl. ¶ 45.

Finally, on October 20, 2011 — that is, two months after the Radens' property had been sold, but before the Radens' right of redemption had expired — Bank of America offered the Radens a non-HAMP loan modification.  Bank of America offered to allow the Radens to come current on their loan obligation if they made a down payment of $9,201.90 (a fraction of the amount that they were in arrears), followed by monthly payments of $2,210.90.  Compl. ¶¶ 38-39.  The Radens rejected this offer — which is not surprising, given that the Radens were unable to make monthly payments of even $1472.72.  Compl. ¶ 41.  The Radens then sued Bank of

America in state court, asserting claims of fraud, negligent misrepresentation, and promissory estoppel.[3]  Bank of America removed the case to federal court and now moves to dismiss the complaint.  ECF No. 8.[4]

## II.  ANALYSIS

### A.  Standard of Review

Under Fed. R. Civ. P. 12(b)(6), a court must accept as true a complaint's factual allegations and draw all reasonable inferences in the plaintiff's favor.  *Aten v. Scottsdale Ins. Co.*, 511 F.3d 818, 820 (8th Cir. 2008).  Although the plaintiff's factual allegations need not be detailed, they must be sufficient to "raise a right to relief above the speculative level."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  The complaint must also "state a claim to relief that is plausible on its face."  *Id.* at 570.  In assessing a claim's plausibility, the Court may disregard any allegation that is conclusory.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (holding that conclusory allegations "are not entitled to the assumption of truth.").

------

[3]The complaint also alleges that Bank of America violated the Minnesota Residential Mortgage Originator and Servicer Licensing Act, Minn. Stat. § 58.13.  This claim was withdrawn at the hearing on Bank of America's motion to dismiss.

[4]Defendants submitted several documents with their motion to dismiss and cited those documents in their briefs.  Ordinarily, if the Court considers matters outside the complaint, a Rule 12(b)(6) motion must be treated as a motion for summary judgment.  *See* Fed. R. Civ. P. 12(d).  The Court may, however, consider documents that are "necessarily embraced" by the complaint without converting the motion into one for summary judgment.  *See Mattes v. ABC Plastics, Inc.*, 323 F.3d 695, 697 n.4 (8th Cir. 2003).  The parties dispute which of the submitted documents are "necessarily embraced" by the complaint.  The parties agree, however, that the Radens' note and mortgage are necessarily embraced by their complaint and thus can be considered without converting Bank of America's motion into one for summary judgment.  Accordingly, the Court has considered only those two documents.

### B. Fraud

The complaint alleges that Bank of America committed fraud because "[a]t all times during the loan modification process, [the Radens] were led to believe that they would be provided with a loan modification that complied with HAMP guidelines." Compl. ¶ 37.[5]  Under Minnesota law, a plaintiff seeking to recover for fraud must establish

> that: (1) there was a false representation by a party of a past or existing material fact susceptible of knowledge; (2) made with knowledge of the falsity of the representation or made as of the party's own knowledge without knowing whether it was true or false; (3) with the intention to induce another to act in reliance thereon; (4) that the representation caused the other party to act in reliance thereon; and (5) that the party suffered pecuniary damage as a result of the reliance.

*Hoyt Properties, Inc. v. Production Res. Grp., L.L.C.*, 736 N.W.2d 313, 318 (Minn. 2007) (internal quotations omitted).

Ordinarily, the Federal Rules of Civil Procedure require that a complaint provide only "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2).  When alleging fraud, however, "a party must state with particularity the circumstances constituting fraud . . . ." Fed. R. Civ. P. 9(b).  *See also Parnes v. Gateway 2000, Inc.*, 122 F.3d 539, 549-50 (8th Cir. 1997) ("'The circumstances constituting fraud must be pleaded in detail.  This means the who, what, when, where, and how: the first paragraph of any newspaper story.'") (quoting *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990)).

---

[5]The complaint also alleges that Bank of America committed fraud when it told the Radens that, if they wanted to avoid foreclosure, they would have to pay the full amount that they were in arrears.  At oral argument, the Radens withdrew this claim.

1.  False Representation

The complaint does not describe "a false representation by [Bank of America] of a past or existing material fact susceptible of knowledge" with the particularity required by Rule 9(b). *Hoyt Properties*, 736 N.W.2d at 318.  Instead, the complaint merely alleges that "[a]t all times during the loan modification process, [the Radens] were led to believe that they would be provided with a loan modification that complied with HAMP guidelines."  Compl. ¶ 37.  The complaint does not specifically identify what actions or statements of Bank of America misled the Radens, or which employee of Bank of America did the misleading, or when the misleading took place.  For example, according to the complaint, during the almost two-year period from late 2009 until the sheriff's sale in August 2011, Bank of America essentially did nothing except request financial information from the Radens.  But the act of requesting information could not have reasonably been interpreted as a promise to offer *a* loan modification — much less a promise to offer a specific *type* of loan modification.  Indeed, the fact that Bank of America was requesting further financial information was a clear indication that the bank was not yet in a position to make a decision about a loan modification.

The complaint does describe a conversation between Bank of America and the Radens that allegedly occurred on July 4, 2009 (a national holiday, when most banks are closed) — a conversation in which an unidentified Bank of America employee allegedly told the Radens that they had been pre-approved for a loan modification.  But telling the Radens that they had been (1) *pre*-approved for (2) *a* loan modification is not the same thing as telling them that they had been (1) *approved* for a (2) *HAMP* loan modification.

Similarly, the complaint alleges that the Radens entered into a trial-period plan with Bank of America beginning in September 2009.  Compl. ¶ 26.  But again, there is no allegation that this trial-period plan was offered pursuant to HAMP, or that Bank of America ever promised that successful completion of the trial-period plan would result in a HAMP modification.

In short, it is difficult to tell from the complaint when or how Bank of America made a false representation to the Radens.  The complaint does not describe any false representation that could give rise to a fraud claim with the particularity required by Rule 9(b).

## 2.  Intent

As noted, the complaint generally alleges that Bank of America defrauded the Radens by "[leading them] to believe that they would be provided with a loan modification that complied with HAMP guidelines."  Compl. ¶ 37.  Thus, the complaint does not allege that Bank of America lied about a past or existing fact, but rather that Bank of America made a promise about a future event.  For such a promise to be fraudulent, the person making the promise must, at the time the promise is made, not intend to fulfill the promise.  As the Minnesota Supreme Court has said:

> "It is a well-settled rule that a representation or expectation as to future acts is not a sufficient basis to support an action for fraud merely because the represented act or event did not take place.  It is true that a misrepresentation of a present intention could amount to fraud.  However, it must be made affirmatively to appear that the promisor had no intention to perform at the time the promise was made."

*Valspar Refinish, Inc. v. Gaylord's, Inc.*, 764 N.W.2d 359, 368-69 (Minn. 2009) (quoting *Vandeputte v. Soderholm*, 216 N.W.2d 144, 147 (Minn. 1974)).

In pleading their fraud claim, the Radens merely assert that Bank of America "intended to defraud" them.  Compl. ¶ 54.  The Radens do not elaborate, and nothing in their complaint even hints as to why Bank of America would have promised the Radens a HAMP loan modification without intending to give them a HAMP loan modification.  After all, Bank of America had no obligation to offer *any* modification to the Radens — HAMP or non-HAMP — and thus it is difficult to understand what would motivate Bank of America to falsely promise that it would offer a HAMP modification.  The Radens have plainly failed to allege intent with particularity, as required by Rule 9(b).  "Because one of the main purposes of [Rule 9(b)] is to facilitate a defendant's ability to respond and to prepare a defense to charges of fraud, conclusory allegations that a defendant's conduct was fraudulent and deceptive are not sufficient to satisfy the rule."  *Commercial Prop. Invs. Inc. v. Quality Inns Int'l, Inc.*, 61 F.3d 639, 644 (8th Cir. 1995) (internal citations omitted).

### 3.  Detrimental Reliance

Last, and most important, the complaint does not describe with particularity how the Radens detrimentally relied upon Bank of America's alleged promise that it would offer a HAMP modification.  The complaint's sole allegation regarding detrimental reliance is the bare-bones assertion that the Radens "relied on Defendants' representations by failing to pursue loss mitigation options . . . ."  Compl. ¶ 56.  "This might suffice to allege *reliance*, but it does not suffice to allege *detrimental* reliance."  *Stumm v. BAC Home Loans Servicing, LP*, No. 11-CV-3736, 2012 WL 5250560, at *3 (D. Minn. Oct. 24, 2012).   The Radens allege that, because Bank of America led them to believe that they would receive a HAMP modification, they "fail[ed] to pursue loss mitigation options."  Compl. ¶ 56.  But the Radens do not plead — much less plead

with particularity — that any of these "options" was actually available to them.  Obviously, the Radens could not have been *harmed* by their failure to pursue loss-mitigation options unless one of those options would have *worked*.

Indeed, the Radens' allegation of detrimental reliance fails not only Rule 9(b)'s requirement of particularity, but even Rule 8(a)(2)'s less-demanding requirement of plausibility.  *See Twombly*, 550 U.S. at 570 (holding that Rule 8 requires the complaint to "state a claim to relief that is plausible on its face").  Not one word of the Radens' complaint supports the notion that the Radens had a "loss mitigation option[]" available to them, or that they lost that "option" only because Bank of America led them to believe that they would receive a HAMP modification.  In their brief (not in their complaint), the Radens suggest that they might have set aside in escrow the money necessary to pay their mortgage had the misrepresentation not been made.  Mem. in Opp'n at 18 [ECF No. 13].  But the complaint alleges that the Radens were unable to make loan payments because they suffered "almost a complete loss of income."  Compl. ¶ 14.  The complaint also makes clear that the Radens were unable to make their payments *before* they ever spoke to Bank of America about a possible loan modification.  Compl. ¶¶ 15, 18.  And by the time that their home was sold in August 2011, the Radens had missed dozens of payments amounting to tens of thousands of dollars.  The notion that the Radens could have tucked away tens of thousands of dollars of (non-existent) income during this period of time is simply not plausible — and not supported by anything alleged in the complaint.

In sum, the Radens' allegation of detrimental reliance is not pleaded with particularity (as required by Rule 9(b)) nor even with plausibility (as required by Rule 8(a)(2), according to

*Twombly*).  For this reason — and also because the complaint fails to plead a false representation

or intent with particularity — the Radens' fraud claim must be dismissed.

### C.  Negligent Misrepresentation

The Radens' complaint also asserts a negligent-misrepresentation claim, which is based

on the same facts as the fraud claim.  "Under Minnesota law, any allegation of misrepresentation,

whether labeled as a claim of fraudulent misrepresentation or negligent misrepresentation, is

considered an allegation of fraud which must be pled with particularity."  *Trooien v. Mansour*,

608 F.3d 1020, 1028 (8th Cir. 2010).  An essential element of a negligent-misrepresentation

claim — as of a claim of fraud — is detrimental reliance.  *See Hardin County Sav. Bank v.*

*Housing and Redev. Auth.*, 821 N.W.2d 184, 192 (Minn. 2012).  As explained above, the

Radens' complaint fails to allege detrimental reliance with either the particularity required by

Rule 9(b) or the plausibility required by Rule 8(a)(2).  Accordingly, the claim of negligent

misrepresentation must also be dismissed.

### D.  Promissory Estoppel

The Radens' complaint also includes a promissory-estoppel claim.  To recover on this

claim, the Radens would have to plead and prove detrimental reliance.  *See Cohen v. Cowles*

*Media Co.*, 479 N.W.2d 387, 391 (Minn. 1992) (setting forth elements of promissory reliance

under Minnesota law).  "But unlike a plaintiff seeking to recover for fraud or negligent

misrepresentation, a plaintiff seeking to recover for promissory estoppel may plead detrimental

reliance under the general pleading standard of Rule 8(a); she does not have to meet the more

stringent standard of Rule 9(b)."  *Stumm*, 2012 WL 5250560, at *4.  Nevertheless, as explained

above, the Radens' allegation of detrimental reliance falls short of what Rule 8(a)(2) requires.

The Radens' promissory-estoppel claim runs into a second problem: the Minnesota Credit Agreement Statute ("MCAS"), Minn. Stat. § 513.33.  Under the MCAS, "[a] debtor may not maintain an action on a credit agreement unless the agreement is in writing . . . ."  Minn. Stat. § 513.33, subd. 2.  "Credit agreement" is defined in the MCAS as "an agreement to lend or forebear repayment of money, goods, or things in action, to otherwise extend credit, or to make any other financial accommodation."  Minn. Stat. § 513.33, subd. 1.  Moreover, the MCAS explicitly provides that an agreement to "enter[] into a new credit agreement" must be in writing. Minn. Stat. § 513.33, subd. 3(a)(3).  The representations upon which the Radens base their promissory-estoppel claim are, in essence, promises that Bank of America will enter into a new credit agreement with the Radens (or, at a minimum, promises that Bank of America will provide a "financial accommodation" to the Radens).  Because those promises were not in writing, the Radens' claim of promissory estoppel is squarely foreclosed by the MCAS.

Although the MCAS acts as an affirmative defense to a claim of promissory estoppel — and although plaintiffs generally "need not plead facts responsive to an affirmative defense before it is raised," *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 601 n.10 (8th Cir. 2009) — "when a plaintiff's complaint . . . sets out all of the elements of an affirmative defense, dismissal under Rule 12(b)(6) is appropriate," *Independent Trust Corp. v. Stewart Information Services Corp.*, 665 F.3d 930, 935 (7th Cir. 2012).  *See also S. Cherry St., LLC v. Hennessee Grp. LLC*, 573 F.3d 98, 103-08 (2d Cir. 2009) (affirming dismissal of claim on statute-of-frauds grounds); *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1383-87 (10th Cir. 1997) (same).  As this Court recently noted:

> This is simply an application of *Twombly*'s and *Iqbal*'s
> requirement that a plaintiff plead a "plausible" claim.  Suppose, for

> example, that a plaintiff brought a claim seeking to recover for injuries that she suffered in a car accident in 1982. Such a claim would, on its face, be barred by the statute of limitations. If the plaintiff's complaint does not include *some* basis for avoiding the statute of limitations, the plaintiff has not pleaded a plausible claim, and the claim must be dismissed.

*Stumm*, 2012 WL 5250560, at *6 (citing *Walker v. Barrett*, 650 F.3d 1198 (8th Cir. 2011); *Indep. Trust Corp.*, 665 F.3d at 935).

The Radens argue that they *have* alleged sufficient facts to overcome the MCAS. According to the Radens, the facts alleged in the complaint demonstrate that Bank of America should be equitably estopped from invoking the MCAS. The MCAS is in the nature of a statute of frauds; like any statute of frauds, the MCAS attempts to prevent fraud by requiring parties to reduce certain types of agreements to writing. The Radens are correct that, when applying a statute of frauds "will protect, rather than prevent, a fraud, equity requires that the doctrine of equitable estoppel be applied." *Lunning v. Land O'Lakes*, 303 N.W.2d 452, 457 (Minn. 1980).

To invoke the doctrine of equitable estoppel, however, the Radens must establish:

> (1) conduct amounting to a representation or concealment of material facts that are (2) known to the party estopped and (3) unknown to the party claiming the benefit of the estoppel, and (4) the conduct is done with the intent or expectation that the party would act on it, and (5) the party does act on it (6) to his detriment.

*Raucutt v. U.S. Bank, N.A.*, No. 11-CV-2948, 2012 WL 1242320, at *3 (D. Minn. Feb. 23, 2012) (citing *Lunning*, 303 N.W.2d at 457). Once again, detrimental reliance is an essential element of a claim made by the Radens. Moreover, because equitable estoppel — unlike promissory estoppel — sounds in fraud, its elements probably must be alleged with particularity under Rule 9(b) (as plaintiffs' counsel conceded at the hearing). *See Stumm*, 2012 WL 5250560, at *7. As the Court has explained several times, the Radens' allegations of detrimental reliance satisfy

neither the particularity standard of Rule 9(b) nor the plausibility standard of Rule 8(a)(2). Therefore, the Radens cannot invoke the doctrine of equitable estoppel to prevent their promissory-estoppel claim from being barred by the MCAS.

### E.  Leave to Amend the Complaint

Finally, in their brief, the Radens request permission to amend their complaint.  *See* Mem. in Opp'n at 29-31.  The Court denies this request for two reasons.

First, the request was not properly made.  The Radens did not formally move for leave to amend their complaint, nor, more importantly, did they submit a copy of the amended complaint that they wish to file.  "The District of Minnesota's Local Rule 15.1 requires a plaintiff to submit a proposed amended pleading with a motion to amend the complaint.  A district court does not abuse its discretion in denying leave to amend where a plaintiff has not followed applicable procedural rules."  *O'Neil v. Simplicity, Inc.*, 574 F.3d 501, 505 (8th Cir. 2009).

Second, this is one of many similar cases filed by plaintiffs' counsel.  In many — if not most — of those cases, plaintiffs' counsel has faced Rule 12 motions similar to the motion filed by Bank of America in this case.  Plaintiffs' counsel is very much aware of the pleading requirements of Rules 8 and 9, and if he had more facts, he undoubtedly would have pleaded them.  Moreover, at oral argument, plaintiffs' counsel was unable to identify any facts that he has learned since filing the Radens' original complaint and whose inclusion in an amended complaint would cure the infirmities discussed above.  Leave to amend the complaint will therefore not be granted.

ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein, IT IS

HEREBY ORDERED THAT:

1.      Defendants' motion to dismiss [ECF No. 8] is GRANTED.

2.      Plaintiffs' complaint [ECF No. 1-1] is DISMISSED WITH PREJUDICE AND

ON THE MERITS.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: February 22, 2013                    s/Patrick J. Schiltz
                                            Patrick J. Schiltz
                                            United States District Judge